IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

ELECTRONICALLY FILED
Feb 27 2020
U.S. DISTRICT COURT
Northern District of WV

FRONTIER WEST VIRGINIA INC., :
:
    Plaintiff :    Civil Action No.  **1:20-CV-35 (Kleeh)**
:
    v. :
:
COMMUNICATIONS WORKERS OF :
AMERICA, AFL-CIO LOCAL UNION :
2011, :
:
    Defendant. :

## COMPLAINT AND PETITION / MOTION TO VACATE ARBITRATION AWARD

Frontier West Virginia Inc. ("Frontier"), by and through counsel, hereby files the instant Complaint and moves this Court for an Order vacating an arbitrator's award under the provisions of §301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185.

### Parties

1.    Plaintiff, Frontier West Virginia Inc., is a West Virginia corporation, with its principle place of business in Norwalk, Connecticut. Frontier is an employer in "an industry affecting commerce" within the meaning of §2(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §152(2) and §301 of the LMRA, 29 U.S.C. §185.

2.    Defendant, Communication Workers of America, AFL-CIO Local Union 2011 ("the Union") is a labor organization within the meaning of §2(5) of the NLRA, 29 U.S.C. §152(5) and §301 of the LMRA, 29 U.S.C. §185.

### Jurisdiction and Venue

3.    This is an action and motion to vacate the December 1, 2019, Arbitration Opinion and Award ("Award") of Arbitrator William J. Miller, Jr. ("the Arbitrator") issued pursuant to a

grievance arbitration procedure set forth in a collective bargaining agreement between an employer and a labor organization. A true and accurate copy of the Award is attached to this Petition as **Exhibit A**.

4. This Court has subject matter jurisdiction under 28 U.S.C. §1331 by virtue of §301 of the LMRA, as amended, 29 U.S.C. §185.

5. Venue is proper in this judicial District under 28 U.S.C. §1391(b)(2) because a substantial part of the acts or omissions giving rise to this action occurred in this District.

**Factual Background**

6. Frontier and the Union are parties to, and bound by, a Collective Bargaining Agreement ("CBA"). The CBA is a contract between an employer and a labor organization representing employees as defined under §301 of the LMRA, 29 U.S.C. §185(a). A true and accurate copy of relevant portions of the CBA is attached to this Petition as **Exhibit B**.

7. Article 11 of the CBA contains a non-discrimination clause which provides that the parties are contractually prohibited from unlawfully discriminating against bargaining unit members with regard to, *inter alia*, race and color. Specifically, Article 11 of the CBA provides as follows:

> **SECTION 1.** In a desire to restate their respective policies, neither the Company nor the Union shall unlawfully discriminate against any employee because of such employee's race, color, religion, sex, sexual orientation, age, disability, or national origin; or because of his activities on behalf of the Union; or because he is a disabled veteran or a veteran of the Vietnam era; Provided, however, that nothing in this provision shall be construed to create rights under any provision of the Company's pension or welfare benefits plans or to modify or affect those plans in any way.
>
> **SECTION 2.** The use of the masculine or feminine gender in this General Agreement shall be construed as including both genders and not as a sex limitation.

**Exhibit B** at Article 11.

8.      Further, Frontier has in place a Code of Business Conduct and Ethics, a true and accurate copy of which is attached to this Petition as **Exhibit C**, which applied to all employees and was incorporated by reference into the CBA. The Code of Business Conduct and Ethics provides, in relevant part, as follows:

>   1.      Who Must Follow Our Code
>
>   All Frontier employees are expected to uphold the highest standards of business ethics and to know and follow the applicable policies, laws and regulations…
>
>   2.      Treating One Another with Respect
>
>   Further, Frontier does not tolerate illegal discrimination, harassment, or threats of any kind. Comments or conduct relating to a person's race, color, religion, national origin, ancestry, sexual orientation, gender, marital status, age, physical or mental disability, or veteran status that fail to respect the dignity of the individual are unacceptable. Such unacceptable behavior can be either sexual or non-sexual in nature and can include, among other things, the following:
>
>   - Derogatory comments or jokes
>   - Visual displays, such as offensive photographs, videos, and drawings
>   - Unwelcome conduct, including physical contact, such as touching, hugging, and massaging
>   - Assault, bullying, or intimidation
>
>   Frontier does not tolerate harassment or discrimination (whether committed by a coworker, a supervisor, or even a non-employee) and does not tolerate retaliation against anyone for a good faith report of discrimination or harassment.

9.      Additionally, Frontier has a Non-Harassment policy, a true and accurate copy of which is attached to this Petition as **Exhibit D**, the violation of which would result in disciplinary action up to and including discharge. The Non-Harassment policy was incorporated into the CBA by reference and provides, in relevant part, as follows:

>   Frontier will not tolerate, condone or allow any discriminatory harassment, including sexual, of any of its employees by a manager or supervisor,

co-workers, customers, vendors or others with whom the Company does business. The Company has no tolerance for such harassment.

Frontier will not tolerate verbal, written, or physical conduct that harasses, disrupts or interferes with another's work performance or which creates an intimidating, offensive or hostile environment.

The conduct includes, but is not limited to:

1. Epithets, slurs, negative stereotyping, threatening, intimidating or hostile acts, that relate to race, color, religion, national origin, sexual orientation, age or disability.

2. Written or graphic material that denigrates or shows hostility or aversion toward an individual or group because of race, color, religion, gender, national origin, sexual orientation, age, or disability and that is placed on walls, bulletin boards, e-mail, downloaded and displayed from the Internet, or elsewhere circulated in the workplace.

Supervisors or employees who engage in any of the above conduct will be subject to disciplinary action, up to and including discharge…

10. Dustin Jett ("Grievant") was hired by Frontier as a telephone operator in Bridgeport Operation Services on November 17, 2014.

11. In December 2018, there were 12 operators working in close proximity to each other in Operation Services in Bridgeport, West Virginia.

12. Grievant (who is a white male) was employed in the same office with another operator employed by Frontier (and who was, like Grievant, a member of the Union) named Jennifer Hunter ("Ms. Hunter"). Ms. Hunter is African-American. Both Grievant and Ms. Hunter had cubicles located in a common work area.

13. On December 21, 2018, Grievant and Ms. Hunter had a verbal altercation where they both became angry and argued regarding the television located in their common workspace.

14.     After that verbal altercation, Grievant sent a text message to Ms. Hunter which was filled with racist vitriol, including a racial slur and negative racial stereotyping.[1] Specifically, Grievant wrote: "So this just happened. So Jenny had the TV remote when we got here watching judge shows (crap) but she's negro so she's dramatic and always the victim." Grievant admitted his text message to be a derogatory slur and stereotype based upon Ms. Hunter's race.

15.     Upon receipt of the text message Ms. Hunter immediately reported the racial harassment to her supervisor. Grievant also approached his supervisor indicating that he "did something real bad." At no point in time did Grievant make any complaints or allegations to Frontier regarding allegedly discriminatory comments made by Ms. Hunter during the altercation.

16.     Frontier conducted a thorough investigation into the events of December 21, 2018, at the conclusion of which Frontier determined that Grievant's usage of a racial slur and subsequent stereotyping of the African-American race were violations of Frontier's zero-tolerance policies prohibiting racial harassment and discrimination in the workplace. As a result of those undisputed violations (Grievant has plainly admitted that he engaged in the racist conduct at issue), Grievant was discharged from employment for just cause. Frontier also determined from its investigation that, while Ms. Hunter's statements made during the verbal altercation were not appropriate language for the workplace, they did not constitute the same type of unlawful harassment and discrimination as Grievant's racist comments. Grievant, himself, admitted under oath that Ms. Hunter's alleged comments were not of the same type or seriousness as his comments to her.

17.     The Union filed two separate grievances on behalf of Grievant, pursuant to the grievance procedure set forth in the CBA, on or around December 22, 2018, and January 8, 2019. The first grievance challenged Grievant's suspension without pay during the investigation into his

---

[1] Grievant testified that he was attempting to send the text message to another co-worker with a name similar to Ms. Hunter's.

racist conduct and the second grievance alleged that Frontier lacked just cause to terminate Grievant's employment. In filing the grievances, and throughout the arbitration process, the Union has inexplicably taken the position that highly racist behavior in the workplace – directed at one of its own bargaining unit members – is somehow not just cause for discipline.

18. Frontier denied the grievances, and pursuant to the grievance and arbitration procedures provided in the CBA, the Union timely appealed the grievances to a consolidated arbitration proceeding.

19. The Parties held an arbitration hearing on July 10, 2019, in Bridgeport, West Virginia before Arbitrator William J. Miller, Jr. The parties presented the following issue for the Arbitrator's determination: Was there just cause for discharge of the Grievant, and if not, what shall be the remedy?

20. During the hearing, the Grievant made the following admissions:

    a. that he was aware of and bound by both Frontier's Code of Business Conduct and Ethics and its Non-Harassment Policy;

    b. that he committed two separate acts of racial discrimination/harassment; and

    c. that his conduct violated the non-harassment policy and subjected him to disciplinary action.

*See* Transcript of Arbitration Hearing attached hereto as **Exhibit E** at p. 105-119.

21. Prior to Grievant's discharge from employment, neither the Union nor the Grievant raised any allegations or filed any grievance relating to any alleged conduct of Ms. Hunter or alleged disparate treatment of Grievant. Moreover, Grievant admitted that there was a substantial difference between his slurs and Ms. Hunter's alleged comments.

22.     The arbitration hearing record was closed on October 1, 2019 when the parties submitted their post-hearing briefs to the Arbitrator.

23.     On December 1, 2019, the Arbitrator issued his Award reducing Grievant's termination to a six month suspension and ordering that he be returned to work and made whole for all losses incurred following the six month suspension imposed retroactively by the Arbitrator. *See* Ex. A at p.15. In so doing, the Arbitrator acted in manifest disregard of the law and issued an arbitration award which: (1) violated public policy; (2) failed to draw its essence from the collective bargaining agreement; and (3) dispensed the Arbitrator's own brand of industrial justice.

24.     The Arbitrator issued this fatally-flawed Award despite noting that:

    a.     "it was evident that the grievant's text improper, was wrong, and was a violation of the Company's rules and regulations. There are no arguments that could be put forth which could justify the text in any manner whatsoever. From a 'just cause' standpoint, the grievant's behavior was flat out 'wrong' and unjustified." Ex. A at p.13.

    b.     "I am in agreement with the Company that the grievant needed to be disciplined for his behavior." *Id.*

25.     In rendering his Award the Arbitrator violated clearly established public policy regarding protection from discrimination and harassment in the workplace. Moreover, the Arbitrator's award fails to draw its essence from the CBA, dispenses the Arbitrator's own brand of justice and exceeds the Arbitrator's contractually-delegated authority. Accordingly, Frontier respectfully moves this Court for an Order vacating the Arbitrator's Award.

## COUNT I: VIOLATION OF PUBLIC POLICY

26. Frontier restates and incorporates fully herein by reference the allegations set forth in Paragraphs 1 through 25.

27. Frontier is entitled to an Order vacating the Award because the Award violates clearly established public policy.

28. An arbitration award may be vacated where the arbitrator ignores the plain language of the agreement, or the award "violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right or wrong." *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 168 F.3d 725, 729 (4th Cir. 1999).

29. Here, the Award should be vacated by this Court because it violates clearly established public policy. Specifically, both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII"), and the West Virginia Human Rights Act, W. Va. Code §5-11-9, *et seq*. ("WVHRA"), strictly prohibit racial discrimination and harassment in the workplace and impose an affirmative duty on both Frontier and the Union to maintain a working environment free of such discrimination and/or harassment. The parties contractually confirmed their commitment to this clear public policy in the non-discrimination clause of the CBA. **Exhibit B** at Article 11.

30. Title VII provides, in pertinent part, that it is unlawful:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin...

42 U.S.C. §2000e-2(a)(1). Title VII also provides that an employer has a legal duty to maintain a workplace environment free from such harassment.

31.     The West Virginia Human Rights Act provides in pertinent part, that it is unlawful for any person, employer, or labor organization to:

> Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section…

W. Va. Code §5-11-9(7)(A). Further, in *Hanlon v. Chambers*, Syl. Pt. 8, 195 W. Va. 99, 464 S.E.2d 741 (1995), the West Virginia Supreme Court of Appeals "recognized the duty of an employer to provide a workplace free from discriminatory harassment, from whatever source." *Fairmont Specialty Services v. West Virginia Human Rights Com'n*, 206 W. Va. 86, 105, 522 S.E.2d 180, 199 (1999).

32.     Because the Arbitrator's Award requires Frontier to reinstate Grievant to his job – after Grievant (himself) admitted to committing heinous acts of racial discrimination and harassment towards a fellow member of the Union – the Award clearly violates established public policy as reflected by Title VII and the WVHRA. Indeed, the Award runs counter to the articulated purpose of those statutes of eliminating racial harassment and discrimination in the workplace because it would require Frontier to place an admitted bigot – who committed undisputed acts of harassment and discrimination in violation of both Title VII and the WVHRA -- back into direct, daily contact with the prior target of his discrimination and/or harassment. As a result, compliance with the Award would actually subject Frontier to civil liability, under the private rights of actions provided by both Title VII and the WVHRA, by vitiating Frontier's legally-required efforts to correct the harassment and discrimination perpetrated by Grievant against the Union's own member (who properly complained to Frontier about such behavior).

33. For all of those reasons, the Arbitrator's Award runs counter to the clearly articulated public policy set forth in both Title VII and the WVHRA. The Arbitrator has unilaterally undermined the protections afforded to employees by those statutes and Frontier is entitled to an Order Vacating the Arbitrator's Opinion and Award.

### COUNT II: THE ARBITRATOR'S AWARD FAILS TO DRAW ITS ESSENCE FROM THE CONTRACT

34. Frontier restates and incorporates fully herein by reference the allegations set forth in Paragraphs 1 through 33.

35. Frontier is entitled to this Court's order vacating the Award because the Award fails to draw its essence from the CBA.

36. Section 301 of the LMRA permits a court to vacate an arbitration award where the arbitrator's decision does not draw its essence from the language of the collective bargaining agreement. An arbitration award may be vacated under 29 U.S.C. §185 where the award does not draw its essence from the contract because it conflicts with the express terms of the collective bargaining agreement.

37. "Moreover, an award fails to draw its essence from the agreement if an arbitrator has 'based his award on his own personal notions of right and wrong' … In such circumstances, a federal court has 'no choice but to refuse enforcement of the award.'" *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006).

38. The Arbitrator has entirely ignored the express language of Article 11 of the CBA, which prohibits discrimination in the workplace. Through his Award, the Arbitrator is requiring Frontier to return to work an employee who unequivocally admitted to committing acts of racial discrimination and harassment (the Arbitrator held as much in his written opinion). Accordingly, the Arbitrator has violated the express language contained in the non-discrimination clause of the

CBA by sanctioning the discriminatory conduct of Grievant such that the Arbitrator's Award fails to draw its essence from that agreement.

39.     Likewise, Frontier's Code of Business Conduct and Ethics and its Non-Harassment policy have been incorporated, by reference, into the CBA and are undisputedly applicable to Grievant. Those long-standing policies prescribe zero-tolerance for harassment and/or discrimination, and plainly state that such racial harassment or discrimination will be grounds for discharge. Critically, there is no exception to the disciplinary penalties required by those policies for allegedly failing to investigate the acts of another employee.

40.     Nonetheless, the Arbitrator's Award has unilaterally rewritten – without the contractual authority to do so – the Code of Business Conduct and Ethics and Non-Harassment Policy by imposing a new obligation to conduct unrelated investigations of other employees prior to imposing discipline for admitted acts of racial discrimination and/or harassment. For that reason, the Arbitrator's Award also fails to draw its essence from the CBA.

41.     Because the Arbitrator's Award fails to draw its essence from the CBA, Frontier is entitled to an Order vacating the Arbitrator's Opinion and Award.

### COUNT III:  THE ARBITRATOR HAS EXCEEDED HIS AUTHORITY AND DISPENSED HIS OWN BRAND OF INDUSTRIAL JUSTICE

42.     Frontier restates and incorporates fully herein by reference the allegations set forth in Paragraphs 1 through 41.

43.     An arbitration award may be vacated, pursuant to 29 U.S.C. §185, where the arbitrator has imposed his own brand of industrial justice, or where the arbitrator has exceeded the scope of his authority granted under the contract.

44.     After the Arbitrator found that "[f]rom a 'just cause' standpoint, the grievant's behavior was flat out 'wrong' and unjustified[,]" such that "just cause" existed for discipline, he

then determined that a reduction in the disciplinary penalty to grievant was required because of an alleged lack of investigation, or evidence of an investigation, into the comments of Ms. Hunter. Ex. A at p. 13-14.

45. In other words, the Arbitrator expressly found that Frontier had just cause for discipline of Grievant. Which was the only issue before him.

47. Despite finding that there was clearly "just cause" for discipline, the Arbitrator proceeded to dispense his own brand of industrial justice by substituting his preferred disciplinary penalty for that of management's. Such a decision is contrary to the authority delegated to him by the CBA which limits the Arbitrator's role to only fashioning a remedy if there was a finding that Frontier lacked just cause for discipline. In this case, the Arbitrator himself found that just cause existed, which precluded the Arbitrator from awarding any further remedy.

48. Finally, pursuant to the plain language of the CBA, "[t]he arbitrator's decision shall apply only to the instant grievance, which shall be resolved thereby." Ex. B at Art. 13, Section 2(b)(5).

49. Here, any issues regarding the actions of Ms. Hunter were undisputedly not a part of the instant grievance and or the sole issue before the Arbitrator. By unilaterally inserting his own evaluation of what Frontier should have done with respect to the employment of Ms. Hunter, the Arbitrator has attempted to exercise authority which was not contractually delegated to him, and decided an issue which was not contractually before him. As a result, the Arbitrator has exceeded his authority and dispensed his own brand of industrial justice.

50. Because the Arbitrator dispensed his own brand of industrial justice and exceeded his contractually-delegated authority, the Arbitrator's Opinion and Award must be vacated.

**PRAYER FOR RELIEF**

Wherefore, Frontier West Virginia, Inc. prays that this Court enter judgment as follows:

1. That the Court order the Arbitrator's Opinion and Award be vacated;

2. That the Court enter an Order enjoining the enforcement of the Award;

3. That Frontier West Virginia, Inc. be awarded its attorney fees, expenses, and costs; and

4. Any other relief that the Court deems just and proper.


Dated: February 27, 2020

Respectfully submitted,

*/s/ Richard M. Wallace*
Richard M. Wallace, WV Bar No.9980
rwallace@littler.com
Lindsay M. Gainer, WV Bar No.12046
lgainer@littler.com

LITTLER MENDELSON, P.C.
Chase Tower
707 Virginia Street, E.
Suite 1010
Charleston, WV  25301
304.599.4600
304.599.4650 (Fax)

4823-7978-7701.2 064194.1164